IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **THORNTON RANCH, LLC,** | § | |
|     *Plaintiff/Counterclaim Defendant*, | § | |
| | § | |
| **v.** | § | **PE:23-CV-00022-DC-DF** |
| | § | |
| **CONTINENTAL RESOURCES, INC.,** | § | |
|     *Defendant/Counterclaim Plaintiff.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Plaintiff/Counterclaim Defendant Thornton Ranch, LLC's First Amended Motion to Dismiss and Strike. (Doc. 23). This matter is before the undersigned Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 23). The Court also **RECOMMENDS** Thornton Ranch's Motion to Strike be **DENIED.**

## I.    BACKGROUND

### A.  Factual Background

This dispute arises from a Surface Lease Agreement ("SLA") between Thornton Ranch, LLC ("Thornton Ranch") and Continental Resources, Inc. ("Continental"). (Doc. 16 at 2).[1] The SLA covers real property owned by Thornton Ranch in Ward County, Texas. *Id.* Thornton Ranch is the Lessor and Continental is the Lessee under the SLA. *Id.*

---

1. The SLA became effective on November 5, 2014. (Doc. 16 at 2). Thornton and Blueford Thornton Trust (as Lessors) entered the SLA with Jagged Peak Energy, LLC (as Lessee). *Id.* Thornton succeed to the rights and obligations of the Bluford Thronton Trust and Continental succeed to the rights and obligations of Jagged Peak Energy, LLC. *Id.*

When the SLA was executed, the parties included "a schedule setting forth certain rights and responsibilities" supplementing the SLA and known as Exhibit A. (Doc. 24 at 2). Relevant to this dispute, Exhibit A articulated the rights and responsibilities governing water sales and the drilling of new water wells. *Id.* In November 2022, however, Thornton Ranch and Continental jointly agreed and executed a publicly-recorded memorandum ("SLA Memo") which Continental claims superseded and replaced Exhibit A with the revised University Lands Rate and Damage Schedule effective November 1, 2022. (Doc. 24 at 2; *see* doc. 16-3 at 2–3).

In January 2023, after executing the SLA Memo, Thornton Ranch alleges Continental represented it would require over 200,000 barrels of water for fracking operations related to 13 oil and gas wells. (Doc. 16 at 4). Thornton Ranch drilled 12 new water wells ("New Water Wells")[2] to meet Continental's operational demands. *Id.* Thornton Ranch then claims Continental breached the SLA in failing to: "exclusively use Thornton Ranch water for its operations"; "pay and reimburse Thornton Ranch for the drilling of new water wells to supply Continental's needs"; "to abide by the notice and operations requirements under the [SLA]"; and "to pay surface damages." *Id.* at 6. As a result of Continental's alleged SLA breach, Thornton Ranch claims Continental owes it more than $3,408,231.70 in damages. *Id* at 6–7.

Continental denies representing it would need over 200,000 barrels of water. (Doc. 22-1 at 3). Instead, Continental claims it "made clear" in January 2023 "that Thornton [Ranch]'s then-existing water production was sufficient" and "Continental's operations required no additional water wells." (Doc. 21 at 3). Continental further claims Thornton Ranch "connected the New Water Wells to Continental's electrical line without permission or authorization" and sold water from the New Water Wells to third parties for Thornton Ranch's economic benefit. *Id.* at 4.

---

2. Three water wells were drilled "to meet [Continental's] operational demands," and then nine more wells were drilled to "stay ahead of [Continental's] needs. (Doc. 16 at 4).

Continental denies it breached the SLA and contends Exhibit A was superseded and has no effect. (*See* doc. 22-1).

### B. Procedural Background

Thornton Ranch initiated this action in the 143rd District Court for Ward County, Texas on June 15, 2023. (*See* doc. 1). Continental then removed the action on June 26, 2023 pursuant to this Court's diversity jurisdiction. *Id.* After removal, on October 6, 2023, Thornton Ranch filed an amended complaint[3] in this Court. (*See* doc. 16). Continental filed its answer and counterclaims on October 20, 2023. (Doc. 17).

On December 1, 2023, Continental filed its amended counterclaims against Thornton Ranch (Doc. 21) and its amended and restated answer and defenses. (Doc. 22). Thornton Ranch moved to dismiss Continental's counterclaims under Rule 12(b)(6) and moved to strike Continental's affirmative defenses under Rule 12(f) on January 5, 2024. (Doc. 23). Continental filed a timely Response on January 19, 2024. (Doc. 24). Thornton Ranch filed a timely Reply on January 26, 2024. (Doc. 25).

## II.   MOTION TO DISMISS

Thornton Ranch seeks dismissal of Continental's counterclaims for declaratory judgment, theft, and attorneys' fees under Rule 12(b)(6). (Doc. 23 at 1). For reasons explained below, the Court finds ten of Continental's counterclaims duplicative and recommends they be dismissed. The Court nonetheless finds Continental properly claimed theft of property and attorneys' fees under the Texas Theft Liability Act, and thus recommends Thornton Ranch's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

---

3. Thornton Ranch refers to this complaint as the Original Complaint. (*See* doc. 16). Since Thornton Ranch filed its Original Petition in state court, the Court refers to it as an amended complaint.

### A.    Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [its] claim." *Causey v.*

*Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B.    Analysis

#### 1.    Continental's Declaratory Judgment Counterclaims

Thornton Ranch first moves to dismiss Continental's declaratory judgment counterclaims, which seek 13 declarations that, according to Thornton Ranch, mirror its existing breach of contract and declaratory judgment claims. (Doc. 23 at 7). But before reaching this issue, the Court addresses Continental's argument in response that Thornton Ranch's failure to acknowledge "or much less address" the *Trejo* factors prevents the Court from exercising its discretion to dismiss Continental's declaratory judgment counterclaims. (Doc. 24 at 6–7).

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The Supreme Court of the United States has "repeatedly characterized the Declaratory Judgment Act as 'an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Admiral Ins. v. W. Rest Haven, Inc.*, No. 6:19-CV-00190, 2019 WL 6037259, at *2 (W.D. Tex. Sept. 16, 2019) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Thus, federal courts have wide discretion to decide whether to adjudicate declaratory judgment claims.

When deciding whether to exercise discretion, courts in the Fifth Circuit engage in a three-step inquiry: (1) whether the declaratory action is justiciable (2) whether the district court has authority to grant relief; and (3) whether a district court should exercise its broad discretion to decide or dismiss the declaratory judgment action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000). Here, as a threshold issue, Continental contends Thornton Ranch's Motion to Dismiss must be denied under the third step. (Doc. 24 at 6–7). The Court therefore focuses the beginning of its discussion on the Court's discretion.

The Fifth Circuit uses seven nonexclusive factors known as the *Trejo* factors to guide district courts' exercise of discretion to accept or decline jurisdiction over declaratory judgment actions. *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 390 (5th Cir. 2003). Thornton Ranch did not mention the *Trejo* factors in its Motion to Dismiss. Because "Thornton [Ranch] failed to address the controlling *Trejo* factors," Continental contends the "Court should reject Thornton Ranch's request to dismiss Continental's declaratory judgment counterclaims." (Doc. 24 at 7). Continental further contends the Court cannot *sua sponte* consider the *Trejo* factors because Thornton Ranch waived any arguments under the factors in failing to raise them in the Motion to Dismiss. *Id.* at 6 n.4. Continental's argument is flawed.

The Court—not the parties—must consider the nonexclusive *Trejo* factors. *See St. Paul Ins. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (finding a *district court abuses its discretion* in deciding whether to dismiss a declaratory judgment action if it does not address and balance the relevant factors) (emphasis added); *Ironshore Specialty Ins. v. Tractor Supply Co.*, 624 F. App'x 159, 164 (5th Cir. 2015) (per curiam) (explaining in the Fifth Circuit the *Trejo* factors "guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit." (quoting *Sherwin-Williams*, 343 F.3d at 390)). In some cases, district courts may look to

parties' arguments (or lack thereof) under the *Trejo* factors, but ultimately the Court must consider the factors on the record in determining whether to exercise its discretion to dismiss a declaratory judgment action. *Am. Bankers Life Assurance Co. of Fl. v. Overton*, 128 F. App'x 399, 402 (5th Cir. 2005) (per curiam) ("When a district court fails to consider the seven *Trejo* factors…we have consistently made clear that it abuses its discretion."); *see Strain v. Gulf Coast Shipyard Grp., Inc.*, 126 F. Supp. 3d 793, 795 (S.D. Miss. 2015) ("Gulf Coast has not argued that any of the *Trejo* factors adopted by the Fifth Circuit weigh in favor of dismissal of Gulf Coast's claims for declaratory relief, *and the Court finds dismissal is not warranted under any of these factors.*") (emphasis added). Not addressing the *Trejo* factors, thus, does not condemn Thornton Ranch's Motion to Dismiss nor prevent the Court from considering the factors on the record.

Further, the Fifth Circuit has found a district court to abuse its discretion in granting declaratory relief where "[t]he declaratory judgment does not declare any significant rights not already at issue" in the underlying dispute. *Madry v. Fina Oil & Chem. Co.*, 44 F.3d 1004, 1994 WL 733494, at *2 (5th Cir. 1994). Here, Thornton Ranch moves to dismiss Continental's declaratory judgment counterclaims because the requested declarations are allegedly mirror images or redundant of matters already at issue in the lawsuit. (Docs. 23 at 1; 25 at 2). In other words, any requested declaration the Court dismisses will still be resolved as part of the lawsuit. Dismissing the declaratory judgment counterclaims simply prevents the Court from deciding the same legal issue twice. As Thornton Ranch contends, this appeals to the judicial economy *Trejo* factor and weighs in favor of dismissal. The remaining *Trejo* factors are neutral.[4]

---

4. Here, almost all *Trejo* factors are neutral except for judicial economy. There is no pending state court action. The matter concerns counterclaims filed by Continental after Thornton Ranch initiated the action. Continental and Thornton Ranch are diverse and neither alleges forum shopping. (Docs. 1 at 3: 16 at 2). Further, the Court does not find the forum inconvenient, and the Court is not called on to construe a state judicial decree. The Court also agrees with Thornton Ranch that determining whether Continental's declaratory judgment counterclaims mirror Thornton

The Court now turns to Thornton Ranch's argument that Continental's declaratory judgment counterclaims are redundant or mirror images of its own claims for declaratory judgment and breach of contract. "Courts uniformly dismiss declaratory judgment claims under [Rule] 12(b)(6) if they are redundant of the substantive legal claims." *Admiral Ins.*, 2019 WL 6037259, at *2. A declaratory judgment is redundant when resolving other claims in the lawsuit would render the declaratory judgment superfluous. *Id.* (citing *Robinson v. Hunt County*, 921 F.3d 440, 450–51 (5th Cir. 2019)). And in the Fifth Circuit, district courts regularly exercise their discretion to dismiss declaratory relief where the declaratory judgment adds nothing to the existing lawsuit. *Id.*; *See Madry*, 1994 WL 733494, at *2.

Starting with Thornton Ranch's breach of contract claim, Thornton Ranch alleges Continental breached the terms of the SLA by:

a. failing to exclusively use Thornton Ranch water for its operations;
b. failing to pay and reimburse Thornton Ranch for the drilling of new water wells to supply Continental's needs,
c. failing to abide by the notice and operations requirements under the [SLA], and
d. failing to pay surface damages.

(Docs. 16 at 6; 23 at 7). Thornton Ranch also asks the Court to interpret the SLA to declare:

a. the SLA provides that "Lessee shall pay Lessor…for fresh water for use on or outside of the boundaries of the Leased Premises. Lessee shall use Lessor's fresh water exclusively for its operations as long as Lessor is capable of supplying adequate fresh water as Lessee's operations demand";
b. this provision does not limit such requirement to exclusively use Thornton Ranch's water to only Continental's operations on the Leased Premises
c. the provision requires Continental to use Thornton Ranch's water on all of Continental's operations regardless of the location of such operations.

(Docs. 16 at 7; 23 at 7–8). Put simply, Thornton Ranch's breach of contract and declaratory judgment claims relate to the parties' obligations under the SLA.

---

Ranch's declaratory judgment and breach of contract claims favors judicial economy. (*See* doc. 25 at 6). The *Trejo* factors favor dismissal of any redundant or mirror image claims.

Continental's amended counterclaims also seek 13 declarations related to the terms of the SLA. Despite this, Continental contends none of its requested declarations are redundant or mirror images of Thornton Ranch's breach of contract and declaratory judgment claims. (Doc. 24 at 7–12). The Court disagrees and finds ten of Continental's sought declarations redundant.

Several of Continental's declarations ask the Court to declare matters already at issue in Thornton Ranch's breach of contract claim. For instance, Continental asks the Court to declare that Exhibit A to the SLA was superseded by the University Lands Rate and Damage Schedule, and because Exhibit A was superseded, it has no effect. (Doc. 21 at 5 ⁋ 24(a)–(b)). To determine whether the SLA was breached, however, the Court needs to determine the terms of the SLA, and this includes determining whether Exhibit A was superseded and what, if any, effect it has over the SLA.[5] This is especially true because the events giving rise to this lawsuit occurred *after* the parties executed the SLA Memo. (Doc. 22-1 at 6). Thornton Ranch's breach of contract claim also requires the Court to determine whether the SLA terms require Continental to exclusively use Thornton Ranch's water. (*See* docs. 16 at 6; 21 at 5 ⁋ 24(c)). Further, the Court will need to determine whether Thornton Ranch substantially performed its duties under the SLA—whether those duties are subject to Exhibit A or the University Lands Rate and Damage Schedule. (*See id.* at 5–6 ⁋ 24(d), (i), (m)).[6]

---

5. For example, the SLA states the "Lessee shall render all surface damage payments to Lessor as outlined in Exhibit 'A' attached to this Agreement prior to construction operations." (Doc. 16-1 at 3 ⁋ 2). Further, the Memo in which the parties publicly agreed the University Lands Rate and Damage Schedules superseded all previous Rate and Damage Schedules, also provides that "the purpose" of the Memo is "to give notice of the *Agreement* and to give notice that all terms and conditions in the *Agreement* are incorporated into" the Memo "as if set out in full." (Doc. 16-3 at 2). The "*Agreement*" is defined in the Memo as the SLA. *Id.* Thus, the SLA and the Memo incorporate Exhibit A and the University Lands Rate and Damage schedule into the SLA terms.

6. Thornton Ranch argues that paragraph 24(d) and (I) are duplicative of Continental's affirmative defenses. (Doc 23 at 9). These affirmative defenses are also duplicative of Continental's counterclaim that Thornton Ranch failed to sufficiently perform under the SLA and Exhibit A. (Doc. 21 at 5–6).

Continental nonetheless argues its "counterclaims draw a key distinction between the SLA itself versus Exhibit A to the SLA," specifically referencing its requested declarations in paragraph 24(a)–(b) and (m). (Doc. 24 at 10). The Court recognizes the SLA, Exhibit A, and the University Lands Rate and Damage Schedule are separate documents. (*See id.* at 2). That said, the SLA incorporates Exhibit A—and if superseded, the University Lands Rate and Damage Schedule—into its terms. Therefore, as stated above, Thornton Ranch's breach of contract claim requires the Court to answer whether Exhibit A or the University Lands Rate Schedule applies, and whether the parties performed their obligations under the SLA. As a result, Continental's counterclaims for declaratory judgment in paragraph 24(a)–(c), (d), (i) and (m) are redundant and therefore should be **DISMISSED**.[7]

Continental also asks the Court to declare matters already before the Court in Thornton Ranch's declaratory judgment claim. Continental asks the Court to declare "that Exhibit A to the SLA does not require Continental to utilize Thornton Ranch's water for Continental's operations taking place outside the boundaries of the SLA." (Doc. 23 at 8). This is nearly identical to Thornton Ranch's proposed declaration that a provision in Exhibit A "requires Continental to use Thornton Ranch's water on all of Continental's operations regardless of the location of such operations." (Doc. 16 at 7). Thus, Continental's counterclaim for declaratory judgment in paragraph 24(h)[8] is redundant and therefore should be **DISMISSED**.

---

7. As Continental points out in its Response, Thornton Ranch's declaratory judgment claims require the Court to interpret an Exhibit A provision. The Court will not look at Exhibit A in a vacuum. If Exhibit A was superseded, and therefore does not affect the terms of the SLA, the Court will make that determination when deciding Thornton Ranch's declaratory judgment.

8. Continental argues Thornton Ranch did not challenge Paragraph 24(h) in its Motion to Dismiss. (Doc. 24 at 8). Thornton Ranch did not specifically mention paragraph 24(h) in its discussion under B.1. (Doc. 23 at 9). The Court nevertheless reads Thornton Ranch's Motion to Dismiss to challenge all 13 counterclaims. Thornton Ranch argues "Continental's amended counterclaims seek *thirteen* declarations which are either: (1) duplicative of Thornton Ranch's requested affirmative relief; or (2) duplicative of Continental's affirmative defenses." (Doc. 23 at 8) (emphasis added). The Court understands this language as alleging all 13 declarations are duplicative.

Yet there is some uncertainty that Thornton Ranch's breach of contract and declaratory judgment claims will resolve Continental's requested declarations regarding third parties and electricity. (Doc. 21 at 5–6 ⁋ 24(e)–(g)). Thornton Ranch's breach of contract and declaratory judgment claims do not specifically address whether the SLA requires Continental to pay for water Thornton Ranch sells to third parties or provide electricity to water wells. *Id.* at ⁋ 24(e), (g). Due to this uncertainty, the Court finds dismissal inappropriate. *See Rafuse v. Advance Concepts & Techs., Int'l, LLC*, No. 20-CV-00718, 2021 WL 1135027, at *3 (W.D. Tex. Jan. 15, 2021) (citing *Admiral Ins.*, 2019 WL 6037259, at *2), *R & R adopted*, 2022 WL 3030792 (W.D. Tex. Aug. 1, 2022), *modified in part on other grounds*, 2022 WL 18585972 (W.D. Tex. Nov. 23, 2022); *see also* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1406 (3d ed. 2024) ("the safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot"). As a result, Thornton Ranch's Motion to Dismiss Continental's counterclaims in Paragraph 24(e)–(g) should be **DENIED**.[9]

With this said, several of Continental's requested declarations are redundant of its own counterclaims for declaratory judgment. Continental considers the possibility Exhibit A is not superseded and exactly restates several requested declarations, asking the Court to declare that, under Exhibit A, Continental is not required to: "pay Thornton [Ranch] for water it sells to third parties"; "operate water wells, including providing electricity to them"; or "pay Thornton [Ranch] to drill, equip, and maintain water wells—including New Water Wells at issue—that

---

9. Continental also contends its declaratory judgments in Paragraph 24(c), (e)–(g), and (j)–(l) "seek forward-looking declarations regarding real, live, and ongoing disputes." The Court does not dismiss Continental's declarations in Paragraph 24(e)–(g), which encompass the same declarations sought in Paragraph 24(j)–(l). As for Paragraph 24(c), the events giving rise to this lawsuit occurred after the SLA Memo was executed. Thus, resolution of this dispute will clarify the terms of the SLA for the parties now and in the future. *See Robinson*, 921 F.3d at 450–51 (holding in "certain breach of contract contexts, district courts have found declaratory judgment unnecessary because 'resolving the breach of contract claim would resolve any future uncertainty' between the parties" (quoting *Flanagan v. Chesapeake Exp., LLC*, No. 15-CV-0222, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015))).

supply water Thornton [Ranch] sells to third parties." (Doc. 21 at 6). But Continental already asks the Court to find Continental is not required to perform the above listed duties and obligations under the SLA. Since the Court must determine the terms of the SLA—and the Court does not dismiss the alternative versions—these declarations will be addressed regardless of whether Exhibit A is superseded. Thus, Continental's counterclaims for declaratory judgment in paragraph 24(j)–(l) are redundant and therefore **DISMISSED**.[10]

On a final note, Continental asks the Court to recognize the early stage of this case and not dismiss its declaratory judgment counterclaims. (Doc. 24 at 12–13). The Court recognizes the early stage of litigation. But, as mentioned, courts in the Fifth Circuit routinely dismiss redundant declaratory judgments "where the relief flowing from the declaration is the same as the resolution of another claim." *Admiral Ins.*, 2019 WL 6037259, at *2; *Setliff v. Zoccam Techs., Inc.*, No. 21-CV-2025, 2022 WL 4240893, at *9 (N.D. Tex. Sept. 13, 2022) (citing *Robinson*, 912 F.3d 450–51). Except for Paragraph 24(e)–(g), reading Continental's counterclaims in a light most favorable to Continental, the Court finds Continental's declaratory judgment counterclaims in paragraph 24(a)–(d), (h), and (i)–(m) redundant. (Doc. 21 at 5–6). The Court thus **RECOMMENDS** Thornton Ranch's Motion to Dismiss as to Continental's counterclaims for declaratory judgment be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 23 at 7–11).

### 2.    Continental's Counterclaim Under the Texas Theft Liability Act

Thornton Ranch also moves to dismiss Continental's theft claim under the Texas Theft Liability Act ("TTLA"). Thornton Ranch contends Continental's theft claim relies on an inapplicable provision of the Texas Model Penal Code. (Doc. 23 at 13–14). After reviewing

---

10. Paragraph 24(h) and 24(m) also consider the possibility Exhibit A is not superseded. The Court found these claims redundant previously and does not relist them here.

Continental's allegations in a light most favorable to Continental, the Court concludes it pleads a claim for theft of property under the TTLA.

The TTLA provides a civil remedy to theft victims as defined under the Texas Model Penal Code. *See* Tex. Civ. Prac. & Rem. Code §§ 134.002–003. To recover for theft in the civil context, a plaintiff must establish: (1) plaintiff had a possessory right to property; (2) defendant unlawfully appropriated property in violation of the theft provisions of the Texas Penal Code; and (3) plaintiff sustained damages because of the theft. *Kinect Solar, LLC v. Globus Enters., LLC*, 1-23-CV-00674, 2024 WL 990071, at *3 (W.D. Tex. Feb. 28, 2024) (citing *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 542 (S.D. Tex. 2011)), *R. & R. adopted*, 2024 WL 1319748 (W.D. Tex. Mar. 27, 2024). The Texas Model Penal Code distinguishes between theft of property and theft of services. A person commits theft generally "if he unlawfully appropriates property with the intent to deprive the owner of property." Tex. Penal Code § 31.03(a); *Rodriguez v. State*, 889 S.W.2d 559, 561 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). A person commits theft of service "if, with intent to avoid payment for service that the actor knows is provided only for compensation: (2) having control over the disposition of services of another to which the actor is not entitled, the actor intentionally or knowingly diverts the other's services to the actor's own benefit…." Tex. Penal Code § 31.04(2). "Service" includes "telecommunication, public utility, or transportation service." *Id.* § 31.01(6).

Continental's amended counterclaim alleges Thornton Ranch committed theft of property under Section 31.03 by "voluntarily, intentionally, and knowingly divert[ing] Continental's electrical infrastructure and the electricity contained therein…." (Doc. 21 at 8). Thornton Ranch moves to dismiss arguing Section 31.03 "is completely inapplicable" because "electricity is a

public utility not property." (Doc. 23 at 12). Thornton Ranch thus argues Continental should have pleaded theft of services under Section 31.04. *Id.* at 12–13.

After reviewing the case law, Section 31.04 is inapplicable to Continental's theft claim as pleaded. Theft of services deprives a service provider of the compensation it receives from providing a service. *See Raney v. State*, 769 S.W.2d 698, 700 (Tex. App.—Corpus Christi-Edinburg 1989, no pet.) (explaining that depriving an owner of his rental property is theft of property but depriving the owner of his ability to rent the property is theft of services); *see also Nelson v. State*, 86 S.W.2d 782, 783 (Tex. Crim. App. 1935) (diverting a natural gas company's gas without compensation was theft of services); *Rodriguez*, 889 S.W.2d at 561 (failing to pay cab driver for a taxicab ride was theft of services); *Ainsworth v. State*, Nos. 10-20-00055-CR, 10-20-00056-CR, 2020 WL 6192941, at \*2 (upholding theft of services conviction for tapping into a water company's water line). Continental is an "independent oil producer," not an electric utility.[11] (Doc. 23 at 2). Continental is not alleging Thornton Ranch stole the electricity service it provides. Rather, Continental alleges Thornton Ranch stole the electricity it possessed. (*See* doc. 21 at 4 (alleging Thornton Ranch used its electricity without permission while Continental "foots the electric bill")). The fact electricity can be provided as a service in one context does not preclude it from qualifying as tangible property in another context.

As to the question of tangible property, neither Section 31.03 (theft generally) nor Section 31.01 (theft definitions) conclusively state whether electricity is tangible property. That said, the Court finds some guidance in Texas Model Penal Code Section 28.03. Section 28.03 defines an offense against tangible property called criminal mischief. TEX. PENAL CODE § 28.03. Relevant to this case, Section 28.03 considers power supply tangible property. TEX. PENAL CODE

---

11. The Texas Administrative Code defines Electric Utility (cross-referenced with public utility) as "a person…that *owns or operates for compensation* in this state equipment or facilities to provide, generate, transmit, distribute, sell or furnish electricity in this state." 16 TEX. ADMIN. CODE § 25.5(42).

§ 28.03(c) ("it shall be presumed that a person who is receiving the economic benefit of…power supply…has knowingly tampered with the tangible property of the owner"). The Court thus finds Section 28.03 persuasive that "electricity" can be tangible property.

Accepting all well-pleaded facts as true, Continental adequately pleads a theft of property claim as to *electricity*. As stated above, theft of property occurs "when property is unlawfully appropriated by someone with intent to deprive the owner of that property." *Haler v. Boyington Cap. Grp., Inc.*, 411 S.W.3d 631 (Tex. App.—Dallas 2013, pet. denied). "Appropriation of property is unlawful if it is without the owner's effective consent." *Kinect Solar*, 2024 WL 990071, at *3. Continental alleges it "possessed or had a legal right to" the electricity within its electrical infrastructure. (Doc. 21 at 8). Thornton Ranch "hook[ed] up" its water wells to Continental's power line without permission, "depriv[ing] and appropriate[ing]" Continental's electricity after Continental sent "written correspondence" advising Thronton Ranch to "cease and desist." (Doc. 21 at 5). Continental also alleges that Thornton Ranch's "knowing, voluntary, and intentional" deprivation[12] of electricity damaged Continental by placing additional stress on Continental's electrical infrastructure.[13] *Id.* As such, the Court finds Continental has properly alleged a claim for theft of property as to *electricity* under the TTLA.

But Continental seems to also allege Thornton Ranch unlawfully appropriated its *electrical infrastructure*. (Docs. 21 at 7–8; 22-1 at 7). "Electrical infrastructure" is a "broad and ambiguous term," and Continental provides no clarification in its pleadings as to what part of its

---

12. Continental uses the terms deprive and divert interchangeably in its pleadings. (*See* doc. 21 at 8). Thornton Ranch highlights that theft of services requires diversion whereas theft of property requires deprivation. (Docs. 23 at 13 n.2; 25 at 8). At this early stage, Continental has adequately pleaded a theft of property claim. Continental's occasional use of the word "divert" rather than "deprive" does not upend its claim.

13. Thornton Ranch also argues Continental "failed to plead that any taking by Thornton Ranch was voluntary and intentional," but only cites to Continental's original counterclaims. (Doc. 23 at 13). Before the Court is Continental's amended counterclaims. Regardless, Continental pleaded Thornton Ranch acted voluntarily. (*See* Doc. 22 at 5 (alleging Thornton Ranch knew Continental wanted it to stop accessing its power line but Thornton Ranch continued to 'access, use, deprive, and appropriate Continental's electricity'")).

electrical infrastructure Thornton Ranch stole. *See Vianet Grp. PLC v. Tap Acquisitions, Inc.*, 2015 WL 13574336, at *3 (N.D. Tex. May 20, 2015) (finding unlawful appropriation of "computer-based monitoring systems" a "broad and ambiguous term that could "consist of multiple components"). Continental's Response provides some clarification, stating the term includes "electrical poles, wires, lines, and taps," presumably qualifying as tangible property for the purposes of civil theft. (Doc. 24 at 14). As to these components, Continental's allegations state at most that Thornton Ranch connected the New Water Wells to its power line without its permission or authorization. (*See* docs. 21 at 7; 22-1 at 7). But Continental continued to use its electrical infrastructure while Thornton Ranch accessed the power line. (*See* doc. 21 at 5 ("Continental's own facilities in the area were also powered by this same line.")). In other words, Thornton Ranch was using Continental's infrastructure without its permission, but Continental still possessed its electrical infrastructure. *See Vianet Grp.*, 2015 WL 13574336, at *3–4 (finding no civil property theft as to the physical components of a computer system but civil theft as to the data on the computer system). Thus, Continental's complaint does not allege a claim for civil theft of property as to its ***electrical infrastructure***.

The Court therefore **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **DENIED** as to Continental's TTLA claim for theft of property as to electricity but **GRANTED** as to electrical infrastructure. (Doc. 23 at 11–15).

### 3.    Continental's Attorneys' Fees Counterclaim

Finding Continental adequately alleged a theft of property claim, the Court turns to whether Continental's counterclaim for attorneys' fees under the TTLA is "premature and improper" under Federal Rule of Civil Procedure 54(d). (Doc. 23 at 16). The Court finds Continental's counterclaim for attorneys' fees is neither "premature" nor "improper."

"Continental's sole purpose of pleading attorney[s'] fees under the TTLA was to provide notice of its intent to seek fees." (Doc. 24 at 16). Continental's reasoning is well-founded. "To recover attorneys' fees, a party must 'put its adversaries on notice that attorneys' fees are at issue in a timely fashion or waive that claim.'" *Solferini v. Corradi USA, Inc.*, No. 20-40645, 2021 WL 3619905, at *3 (5th Cir. 2021) (per curiam) (quoting *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996)). The Fifth Circuit has found parties may provide notice "by specifically pleading for attorneys' fees in the complaint." *United Indus.*, 91 F.3d at 765.

Under Rule 54, parties are also required to move for attorneys' fees after the entry of judgment. FED. R. CIV. P. 54(d)(2)(A)–(B); (*see* doc. 24 at 17). One purpose of Rule 54 is to ensure the opposing party has notice of the attorneys' fees claim regardless of whether the moving party provided notice in the pleadings. *United Indus.*, 91 F.3d at 766 ("[Rule 54] serves several laudable purposes that are underscored by United's failure to comply in this case. The Rule assures that the opposing party has notice of the [attorneys' fees] claim."). As a result, Rule 54 is the final opportunity to notice attorneys' fees, not the first. *See Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998). Continental therefore properly noticed Thornton Ranch of its claim for attorneys' fees.

Thornton Ranch directs the Court's attention to a substantially similar case in which our sister court dismissed a counterclaim for attorneys' fees. The Court respectfully disagrees.[14] Several times the Fifth Circuit has recognized a specific pleading of attorneys' fees sufficient but

---

14. Our sister court in the Eastern District determined reliance on *United Indus.* was "misplaced…specifically in the context of a request for fees under the TTLA," but the Fifth Circuit has indicated otherwise. *Drywall Elements, LLC v. Edward Wolff & Assocs., LLC*, No. 21-CV-00537, 2023 WL 2695105, at *4 n.5 (E.D. Tex. Mar. 29, 2023). In *Solferini*, the Fifth Circuit held the plaintiff "put the issue of attorneys' fees in play by bringing a claim under a statute that permits the prevailing party to recover attorneys' fees *and pleading for attorneys' fees*." 2021 WL 3619905, at *3 (emphasis added). Further, looking to *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1240, 1242 (5th Cir. 1984), the Fifth Circuit found the plaintiff "had adequate notice" the defendant, if the prevailing party, would seek attorneys' fees because the statute authorized an award of attorneys' fees. *Id. Solferini* shows that where an exception to the general rule provided in *United Indus.* applies, it does not prevent a party from pleading for attorneys' fees to provide notice to the opposing party.

not necessary to place an opposing party on notice. *United Indus.*, 91 F.3d at 766 ("[A]ttorneys'

fees must be specifically required in a timely fashion. This is accomplished by including a

request for attorneys' fees in the pleadings and by timely filing a Rule 54(d) motion…."); 

*Solferini*, 2021 WL 3619905, at *3 ("[N]otice may be accomplished by specifically pleading for

attorneys' fees, [but] notice may be provided in other ways.") (internal citations omitted); *Al-

Saud v. Youtoo Media, L.P.*, 754 F. App'x 246, 255 (5th Cir. 2018) ("In our court, satisfying

Rule 9(g) appears to be sufficient but not necessary" to "put adversaries on notice that attorneys'

fees are at issue." (quoting *United Indus.*, 91 F.3d at 765)); *see also Hunt Dev. Grp., L.P. v. Dick

Corp.*, No. EP-09-CA-313, 2010 WL 11601053, at *5 (W.D. Tex. Dec. 8, 2010) ("The general

rule in federal court is that attorney's fees are 'special damages' within the meaning of Federal

Rule of Civil Procedure 9(g), and thus, must be specifically pleaded in order to put the other

party on notice, or else the request is forfeited."). "Accordingly, in this [C]ircuit re[q]uests for

attorney[s'] fees must be pleaded. But the failure to plead for attorney[s'] fees will not

necessarily preclude a party's ability to recover attorneys' fees if the party's opponent is on

notice that attorney[s'] fees are being sought." *In re IFS Fin. Corp.*, Nos. 02-39553-H1-97, H-

10-0047, H-10-0052, 04-3745, 04-3768, 2010 WL 1992579, at *3 (S.D. Tex. May 18, 2010).

Continental diligently provided notice to Thornton Ranch, choosing to specifically plead

attorneys' fees as a counterclaim.

The Court thus **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **DENIED** as

to Continental's counterclaim for attorneys' fees. (Doc. 23 at 16).

### C.    Continental's Alternative Request for Leave to Amend

In Continental's Response, Continental ask the Court for leave to amend its complaint "if

the Court determines any of [its] counterclaims or defenses are [not] sufficiently pleaded."

(Doc. 24 at 20). Since the Court partially dismisses Continental's declaratory judgment and theft counterclaims, the Court reaches Continental's request for leave to amend.

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, SA-22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)). Based on this rationale, courts typically provide plaintiffs with an opportunity to amend a complaint before dismissal; however, dismissal "is appropriate when the plaintiff was previously provided ample opportunity to cure the deficiencies. *Id*. (citing *Foman v. Davis*, 371 U.S. 182, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

In this case, the Court previously granted Continental leave to amend its complaint. Further, Continental does not state the substance of its proposed amendment, nor does it attach a second amended complaint for the Court. Continental has been given ample opportunity to cure deficiencies in its complaint, and further amendment would be futile. *See Smith*, 2023 WL 5918322, at *9. Thus, Continental's request to amend its complaint is **DENIED**.

### III.     MOTION TO STRIKE

In its amended answer, Continental asserts 13 defenses and affirmative defenses and reserves the right to assert future affirmative defenses. (Doc. 22-1 at 8–11). Thornton Ranch contends Continental's "broad and generic recitations, without any supporting facts" do not give Thornton Ranch fair notice. (Doc. 23 at 16). As a result, Thornton Ranch asks the Court to strike

Continental's contract-based defenses, equitable defenses, and its reservation to raise additional affirmative defenses. *Id.*

### A.     Legal Standard

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense." FED. R. CIV. P. 12(f). "But striking a pleading is disfavored and should be done sparingly, as it is a drastic remedy 'and because it is often sought by a movant simply as a dilatory tactic.'" *Stross v. Active Network, LLC*, No. 19-CV-8, 2019 WL 2213883, at *4 (W.D. Tex. May 22, 2019) (quoting *Am. S. Ins. v. Buckley*, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010)) (internal citations omitted). Even a well-founded motion to strike will generally be denied without a showing of prejudice. *Stross*, 2019 WL 2213883, at *4; 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1381 (3d ed. 2004) ("[E]ven when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party.").

A defendant must "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999); *see LSREF2 Baron, LLC v. Tauch*, 751 F.3d 398 (5th Cir. 2014) (indicating the fair notice standard is appropriate for pleading affirmative defenses). Fair notice is met "if the defendant sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise." *Id.* (quoting *Home Ins. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993)). And in some cases, "merely pleading the name of the affirmative defense" is enough to provide plaintiff fair notice. *Id.*

Further, when premised on "insufficiency," a movant must demonstrate the defense is insufficient as a matter of law. *Joe Hand Promotions, Inc. v. HRA Zone, LLC*, 2013 WL

5707810, at *2 (W.D. Tex. Oct. 18, 2013).[15] But even when dealing with a question of pure legal sufficiency, courts are "very reluctant" to strike, finding such questions "best determined after further development by way of discovery and a hearing on the merits, either on a summary judgment motion or at trial." *Id.* (quoting WRIGHT & MILLER, *supra*, at § 1381). Taken as a whole, the Court has broad discretion to decide whether to strike. *Hill Country Bakery, LLC v. Honest Kitchen Grp., LLC*, No. 17-CV-334, 2017 WL 9362706, at *2 (W.D. Tex. Dec. 11, 2017).

### B.      Analysis

Continental's amended affirmative defenses incorporate more than two pages of supporting facts. (Doc. 22-1 at 6–8). Thornton Ranch does not mention these supporting facts, and instead argues that Continental pleads only "broad and generic recitations, without any supporting facts." (Doc. 23 at 16 (quoting *Hill Country Bakery*, 2017 WL 9362706, at *2)). While this was true of Continental's Original answer, this could not be further from the truth now. Despite this, Thornton Ranch continues to compare this case to decisions in *McNeely* and *Joe Hand Promotions*, where the defendants provided single-sentence affirmative defenses devoid of any facts. *McNeely v. Trans Union LLC*, No. 18-CV-849, 2019 WL 338127, at *2 (S.D. Tex. Jan 28, 2019) (asserting single-sentence affirmative defenses and providing no case-related facts in any part of the answer); *Joe Hand Promotions, Inc. v. Izalco, Inc.*, No. H-16-3696, 2017 WL 3130581, at *2 (S.D. Tex. July 24, 2017) (same). In its Reply, Thornton Ranch states that "Continental points baldly to its allegations, offering no more than conclusory assertions of their adequacy," and then cites *McNeely* once more. (Doc. 25 at 8).

---

15. Judge Yeakel adopted the R.& R. on December 16, 2023. (Civil Action No. 1:13-CV-359 at Doc. 19).

Continental need only plead its affirmative defenses with enough specificity or factual particularity to give Thornton Ranch fair notice. *Woodfield*, 193 F.3d 362. Continental has provided Thornton Ranch with adequate notice and pleads with far more factual support than cases such as *McNeely* and *Joe Hand Promotions*. *See Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*, Nos. 21-CV-00213, 21-CV-00215, 2022 WL 2055232, at *6 (E.D. Tex. June 6, 2022) (finding a defendant's answer with more than three pages of factual allegations to ground defendant's equitable affirmative defenses). The Court also finds no issue with Continental's reservations of rights. For these reasons, the Court **RECOMMENDS** that Thornton Ranch's Motion to Strike be **DENIED**. (Doc. 23 at 16–20).

### 1.    Continental's Contract-Based Defenses

Continental pleaded affirmative defenses for "lack and/or failure of consideration"; "statue of frauds"; and "impossibility, impracticability, and/or frustration of purpose." (Doc. 22-1 at 9).   Thornton Ranch moves to strike Continental's contract-based defenses on two grounds. First, Thornton Ranch contends Continental's lack of consideration and statute of fraud defenses are insufficiently pleaded and do not give Thornton Ranch fair notice. (Doc. 23 at 17–18). Second, Thornton Ranch contends Continental's impossibility, impracticability and/or frustration of purpose defense "must be struck" because "Continental's sole fact" pleaded "is a far cry from impossibility or impracticability." *Id.* at 19.

As earlier explained, the Court finds Continental's incorporation of more than two pages of supporting factual allegations to provide Thornton Ranch fair notice. Continental even provided additional facts within its statute of frauds affirmative defense: "Continental never executed, signed, assumed, or endorsed any written agreement or contract that is currently in effect that requires Continental to purchase or exclusively use Thornton [Ranch]'s water for all

of Continental's operations, or to operate any water wells, among other things." (Doc. 22-1 at 9).

*Compare* (Doc. 22-1 at 9) *with McNeely*, 2019 WL 338127, at *2 ("Nationstar only stated that "[p]laintiff's claims are barred, in whole or in part, by the statute of frauds."). To use Thorton Ranch's own expression, "this is a far cry" from a "bald assertion of the defense and nothing more." *See TracFone Wireless, Inc v. King Trading, Inc*, No. 08-CV-0398, 2008 WL 4826035, at *1 (N.D. Tex. Nov. 6, 2008) (striking single-sentence affirmative defenses without any pleaded facts).

As for Thornton Ranch's contention that Continental's sole fact pleaded for "impossibility, impracticability, and/or frustration of purpose" is a "far cry from impossibility or impracticability," the Court finds this issue best addressed in a summary judgment motion rather than a motion to strike. *HRA Zone, LLC*, No. 2013 WL 5707810, at *3 ("[W]hether [d]efendants' affirmative defenses are meritorious should be determined after discovery is conducted in this case and should be addressed in a summary judgment motion, rather than in a motion to strike."). Likewise, to the extent Thornton Ranch argues the statute of frauds does not apply, the Court finds the same. As a result, Thornton Ranch's Motion to Strike Continental's contract-based defenses should be **DENIED**.

### 2.      Continental's Equitable Defenses

In its original answer, Continental provided a "laundry list" of equitable defenses. Continental simply asserted that "Thornton [Ranch]'s claims are barred, in whole or part, by estoppel, equitable estoppel, quasi-estoppel, estoppel by conduct, ratification, acquiescence, waiver, consent, release, mistake, unclean hands, offset, setoff, payment, and/or other equitable principles." (Doc. 17 at 7). In contrast, Continental's amended equitable affirmative defenses, as stated above, incorporate more than two pages of supporting facts and provide:

Thornton's claims are barred, in whole or part, by estoppel, equitable estoppel, ratification, acquiescence, waiver, consent, release, offset, setoff, and /or payment. This includes, but is not limited to, Thornton being estopped from enforcing, and/or waiving and releasing, the SLA's exclusive water use requirement, assuming it exists under the SLA (which is denied), given Thornton's failure to provide first right of use of water to Continental. In addition, Thornton is estopped from claiming, or has acquiesced, waived, or released, any rights to the requested reimbursements for the new water wells due to the actions alleged herein, including the lack of any reasonable request under the SLA. Likewise, Thornton did not obtain ratification, acquiescence, or consent from Continental for the above acts and/or those supporting relief claimed by Thornton (or, alternatively, Thornton ratified, acquiesced, and/or consented to changes to the SLA and/or its resulting effects). Further, Thornton's claims are barred by offset, setoff and payment in light of the amounts incurred by Continental that are subject of its counterclaims, alleged herein.

*Id.* at 10. This is far more than a "laundry list" or a "broad and generic recitation." *Hill Country Bakery*, 2017 WL 9362706, at *5 (finding a "broad and generic recitation of equitable defenses" where defendants provided no factual support); *see McNeely*, 2019 WL 338127, at *2 (striking equitable affirmative defenses pleaded in name only with no supporting facts). Thornton Ranch cannot claim unfair surprise. At this early stage, Continental provides Thornton Ranch with fair notice of the affirmative defenses being advanced and does more than provide a simple list of equitable defenses. As a result, Thornton Ranch's Motion to Strike Continental's equitable defenses should be **DENIED**.

### 3. Continental's Reservation of Right to Assert Additional Defenses

Thornton Ranch also asks the Court to strike Continental's reservation of right "to plead or assert additional defenses and affirmative defenses that may become necessary and proper during the defense and prosecution of this matter." (Doc. 22-1 at 11). Thornton Ranch looks to *McNeely* and *Joe Hand Promotions* in which the Southern District of Texas struck similar reservations of rights. *McNeely*, 2019 WL 338127, at *2; *Joe Hand Promotions*, 2017 WL 3130581, at *3. But here Continental clarifies that "[i]f necessary, Continental will amend its

pleadings in accordance with [Rule] 15." (Doc. 22-1 at 11). The Court understands this reservation—and indeed Continental clarifies in its Response—as notifying Thornton Ranch that "should discovery demonstrate additional defenses are appropriate" Continental will seek leave under Rule 15 to amend its pleading. (Doc. 24 at 19).

After a party may no longer amend its pleading as a matter of course, Rule 15 allows a party to "amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Continental acknowledges it must seek leave to amend its answer if it seeks additional affirmative defenses. (Doc. 24 at 19). Striking Continental's notice that it *might* seek leave in the future—in accordance with Rule 15—is therefore unnecessary. *Spring Nextel Corp. v. Sam Computs.*, No. A-12-CA-1095, 2013 WL 12120416, at *2 (W.D. Tex. Aug. 5, 2013) (declining to strike a reservation-of-rights clause which included a reference to Rule 15). For this reason, Thornton Ranch's Motion to Strike Continental's notice that it may seek future leave under Rule 15 should be **DENIED**. (Doc. 23 at 16–20).

## IV.     RECOMMENDATION

For the reasons given above, the undersigned **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 23). Specifically, the undersigned **RECOMMENDS** Continental's Declaratory Judgment Counterclaim be **GRANTED** as to Paragraph 24(a)–(d), (h), (i)–(m) and **DENIED** as to Paragraph 24(e)–(g). (Doc. 21). The undersigned further **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **DENIED** as to Continental's counterclaim under the TTLA as to electricity and its related counterclaim for attorneys' fees. *Id.* Lastly, the undersigned **RECOMMENDS** Thornton Ranch's Motion to Strike be **DENIED**. (Doc. 23).

SIGNED this 10th day of July, 2024.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).