IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **THORNTON RANCH, LLC,** | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| **v.** | § | **PE-23-CV-00022-DC-DF** |
| | § | |
| **CONTINENTAL RESOURCES,** | § | |
| **INC.,** | § | |
| *Defendant/Counterclaim Plaintiff.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Plaintiff/Counterclaim Defendant Thornton Ranch, LLC's Second Amended Motion to Dismiss. (Doc. 50). This matter is before the undersigned Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Thornton Ranch's Second Amended Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 50).

### I. BACKGROUND

#### A. Factual Background

Thornton Ranch, LLC ("Thornton Ranch") is a family-operated ranch that owns real property in Ward County, Texas. (Doc. 50 at 2). Continental Resources, Inc. ("Continental"), an independent oil producer, leases and maintains operations on Thornton Ranch's real property. *Id.* Thornton Ranch and Continental are parties to a

1

Surface Lease Agreement ("SLA"), which enumerates the rights and obligations of the parties with respect to the real property leased to Continental. (Doc. 51 at 2). Under the SLA, Thornton Ranch is the Lessor and Continental is the Lessee. (Doc. 45 at 2).

Continental builds oil and gas wells on the leased property and surrounding areas. (*See* Doc. 45 at 4). Thornton Ranch provides freshwater for Continental's operations. *Id.* at 5. Thornton Ranch contends the SLA requires Continental to exclusively use Thornton Ranch's water for its operations. (Doc. 50 at 2). On January 10, 2023, Continental representatives met with Thornton Ranch representatives to discuss Continental's freshwater needs for an upcoming operation. (Doc. 47 at 2). This dispute hinges on the representations made (or not made) at the January 10 meeting.

The parties left the meeting with vastly different interpretations of Continental's freshwater needs. Thornton Ranch claims "Continental requested that Thornton Ranch provided adequate water supply for Continental's operations related to the new wells." (Doc. 45 at 5). Continental counters that it "mad[e] clear it did not need any additional freshwater wells." (Doc. 47 at 3). Despite Continental allegedly denying the need for new water wells, Thornton Ranch drilled 12 new wells ("New Water Wells") to meet Continental's operation demands. (Doc. 50 at 2). Continental further alleges Thornton Ranch connected the New Water Wells to Continental's electrical line without permission. *Id.* Continental, maintaining the New Water Wells were unnecessary, has declined to reimburse Thornton Ranch. *Id.* Both parties allege the other has breached the SLA.

### B. Procedural Background

On June 15, 2023, Thornton Ranch filed this case in the 143rd District Court of Ward County, Texas, alleging Continental breached the terms of the SLA and bringing claims for detrimental reliance and declaratory and injunctive relief. (Doc. 50 at 3). Continental removed the action on June 26, 2023, asserting this Court's diversity jurisdiction. *Id.* Continental then filed its Original Answer and Counterclaims. (Doc. 17). On December 1, 2023, Continental filed its Amended Counterclaims, which Thornton Ranch moved to dismiss. (Docs. 21; 23). The Court issued a Report and Recommendation ("First R. & R.") recommending Thornton Ranch's Motion to Dismiss be granted in part and denied in part. (Doc. 34).

Before the District Court considered the First R. & R., Continental filed a Joint Motion for Leave to Amend Pleadings. (Doc. 39). The District Court granted the Motion. (Doc. 40). Thornton Ranch subsequently filed its Amended Complaint, (Doc. 45), and Continental filed its Second Amended Answer and Second Amended Counterclaims. (Docs. 46; 47). These are the active pleadings before the Court.

On August 22, 2024, Thornton Ranch filed its Second Amended Motion to Dismiss, seeking partial dismissal of Continental's Second Amended Counterclaims. (*See* Doc. 50). Thornton Ranch moves to dismiss Continental's counterclaims for declaratory judgment, theft, and trespass. *Id.* Continental filed a timely Response (Doc. 51) to which Thornton Ranch replied. (Doc. 52). Thus, the Second Amended Motion to Dismiss is ripe for disposition.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338

(5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

Thornton Ranch moves to dismiss Continental's counterclaims for declaratory judgment, theft, and trespass under Rule 12(b)(6). (*See* Doc. 50). For reasons explained below, the Court finds Thornton Ranch's Second Amended Motion to Dismiss should be **GRANTED IN PART** and **DENIED IN PART**.

### A. Continental's Declaratory Judgment Counterclaim

Thornton Ranch first moves to dismiss Continental's declaratory judgment counterclaim, which seeks four declarations that, according to Thornton Ranch, are redundant of its breach of contract and declaratory judgment claims. (Doc. 50 at 7–8, 10). The Court agrees.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

5

seeking such declaration." 28 U.S.C. § 2201. The Supreme Court of the United States has "repeatedly characterized the Declaratory Judgment Act as 'an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Admiral Ins. v. W. Rest Haven, Inc.*, No. 19-CV-00190, 2019 WL 6037259, at *2 (W.D. Tex. Sept. 16, 2019) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Thus, federal courts have wide discretion to decide whether to adjudicate declaratory judgment claims.

When deciding whether to exercise discretion, courts in the Fifth Circuit engage in a three-step inquiry: (1) whether the declaratory action is justiciable; (2) whether the district court has authority to grant relief; and (3) whether a district court should exercise its broad discretion to decide or dismiss the declaratory judgment action. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000). Here, neither party disputes the justiciability of the declaratory action or the Court's authority to grant relief. So the Court turns its attention to the third step—whether the Court should exercise its discretion to hear or to dismiss the declaratory judgment counterclaims.[1] *Bowman v. Bella Estancias, LLC*, No. 17-CV-0091, 2018 WL 1115202, at *3 (W.D. Tex. Feb. 15, 2018).

Under Rule 12(b)(6), courts uniformly dismiss declaratory judgment claims redundant of the substantive legal claims in the lawsuit. *Admiral Ins.*, 2019 WL 6037259,

---

1. The Court addressed the *Trejo* factors at length in the First R. & R. (Doc. 34 at 7–8). There, the Court found "almost all *Trejo* factors [were] neutral except for judicial economy[,]" which favored resolution of whether Continental's declaratory judgment counterclaim mirrored Thornton Ranch's breach of contract and declaratory judgment claims. *Id.* at 7 n.4. Nothing in Continental's Second Amended Counterclaims or Thornton Ranch's Second Amended Motion to Dismiss changes the Court's analysis. The *Trejo* factors favor dismissal of any redundant or mirror image claims.

at *2. A declaratory judgment is redundant when resolving other claims in the lawsuit would render the declaratory judgment superfluous. *Id.* (citing *Robinson v. Hunt County*, 921 F.3d 440, 450–51 (5th Cir. 2019)). And in the Fifth Circuit, district courts regularly exercise their discretion to dismiss declaratory relief where the declaratory judgment adds nothing to the existing lawsuit. *Id.*; *See Madry*, 1994 WL 733494, at *2.

Starting with Thornton Ranch's breach of contract claim, Thornton Ranch alleges Continental breached the terms of the SLA by:

a.  Failing to exclusively use Thornton Ranch water for its operations,

b.  Failing to pay and reimburse Thornton Ranch for the drilling and equipping of new water wells to supply Continental's needs,

c.  Failing to report to Thornton Ranch the amount of produced water transported across the Leased Premises for calendar years 2016–2023,

d.  Failing to properly pay Thorton Ranch for the total volume of produced water transported across the leased premises based on the formula stated within the SLA,

e.  Failing to abide by the notice and operations requirements under the SLA, and

f.  Failing to pay for surface damages.

(Doc. 45 at 12). Thornton Ranch also asks the Court to interpret the SLA to declare:

a.  SLA provides that "Lessee shall pay Lessor … for the fresh water for use on or outside of the boundaries of the Leased Premises. Lessee shall use Lessor's fresh water exclusively for its operations as long as Lessor is capable of supplying adequate fresh water as Lessee's operations demand";

b.  SLA does not limit such requirement to exclusively use Thornton Ranch's water to only Continental's operations on the Leased Premises; and

c.  SLA requires Continental to use Thornton Ranch's water on all of

Continental's operations regardless of the location of such operations.

*Id.* at 13. In other words, Thornton Ranch's breach of contract and declaratory judgment claims relate to the parties' obligations under the SLA.

Continental's Second Amended Counterclaims also seek four declarations related to the terms of the SLA. Despite this, Continental contends none of its requested declarations are "redundant of, or subsumed by," Thornton Ranch's breach of contract or declaratory judgment claims. (Doc. 51 at 6–7). The Court disagrees.

Before turning to the merits, the Court briefly adds that both parties filed amended pleadings after the First R. & R. (Docs. 45; 46; 47). The amended pleadings helped alleviate some of the uncertainty mentioned in the First R. & R., which, as Thornton Ranch points out, is now moot. (Docs. 34 at 11; 52 at 2). Continental relies heavily on the First R. & R.'s reasoning. (Doc. 51 at 4–5). While some of the reasoning in the First R. & R. applies, the Court cautions that it did not have the foresight to anticipate changes or clarifications in the parties' amended pleadings. With this in mind, the Court turns to the merits. The Court finds Continental's declaratory judgment counterclaim redundant of its own breach of contract counterclaim, its affirmative defenses, and Thornton Ranch's breach of contract claim.

Starting with Declaration 18d, Continental seeks a declaration "[t]hat the SLA requires Thornton to not disclose the terms, conditions, or payment details of the SLA and its Exhibit A to any third parties." (Doc. 47 at 5 ¶ 18d). Thornton Ranch contends that 18d is superfluous because Thornton Ranch's claims require the Court to interpret the SLA. (Docs. 50 at 10; 52 at 3). But the Court need not reach Thornton Ranch's breach

of contract claim because Continental raises this issue in *its* breach of contract claim. *See Tetrad Techs., LLC v. Implus Footcare, LLC*, No. 21-CV-00796, 2022 WL 3566455, at *3–4 (W.D. Tex. May 23, 2022) (holding a declaration redundant because it duplicated defendant's counterclaims); *see also Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 07-CV-1799, 2008 WL 2434245, at *3 (N.D. Tex. June 17, 2008) (rejecting defendant's declaratory judgment that would be decided under defendant's other counterclaim). Continental's second counterclaim pleads Thornton Ranch breached the contract's confidentiality provision, precluding Thornton Ranch from disclosing the "terms, conditions, and payment details of the SLA and its Exhibit A to any third party." (Doc. 47 at 5). Thornton Ranch does not seek dismissal of Continental's second counterclaim (Doc. 52 at 1); so, it will be decided as part of the lawsuit. Declaration 18d is therefore **REDUNDANT**.

The Court also agrees with Thornton Ranch that Declaration 18b mirrors Thornton Ranch's breach of contract claim. (Doc. 50 at 10). Thornton Ranch pleads Continental breached the SLA in failing to reimburse Thornton Ranch for drilling and equipping the New Water Wells. (Doc. 45 at 12). Continental seeks the mirror image — Continental is not required to reimburse Thornton Ranch for drilling, equipping, and maintaining the New Water Wells, which supply freshwater to third parties. (Doc. 47 at 5). Continental contends Thornton Ranch's breach of contract claim does not reach whether Continental must pay for the drilling of wells that supply water to third parties; thus, Declaration 18b is not subsumed in Thornton's claim. (Doc. 51 at 6). But including the New Water Wells supply freshwater to third parties does not change the

fact that Continental asks the Court to declare it has no obligation under the SLA to reimburse Thornton Ranch for the New Water Wells. This declaration is the mirror image of Thornton Ranch's breach of contract claim. Declaration 18b is therefore **REDUNDANT**.

Likewise, Declaration 18c is redundant of Continental's alternative breach of contract claim and affirmative defenses. (Docs. 46 at 10 ¶ 61k; 47 at 6–7). Continental seeks a declaration "[t]hat the SLA does not require Continental to operate the New Water Wells, including providing electricity to them[.]" (Doc. 47 at 5 ¶ 18c). But this declaration is redundant of Continental's alternative breach of contract claim, which pleads, in relevant part, "[n]either the SLA nor its Exhibit A require Continental to operate, or provide electricity to, the New Water Wells, even if a 'reasonable request' was made (which is denied)." *Id.* at 7 ¶ 31. Thornton Ranch does not seek to dismiss Continental's alternative breach of contract claim. (Doc. 52 at 1). And, in its affirmative defenses, Continental asserts Thornton Ranch was not authorized to connect the 12 New Water Wells to Continental's electric line and infrastructure expecting Continental to pay all costs associated with the water wells (including electricity). (Doc. 46 at 10 ¶ 61k). Thus, even if the Court does not reach Continental's alternative breach of contract claim, it will still resolve Declaration 18c in addressing Continental's affirmative defenses. *See My Bucket Journals, LLC v. Nagy*, No. A-21-CV-1125, 2023 WL 4872908, at *3 (W.D. Tex. June 5, 2023), *R. & R. adopted*, 2023 WL 4879834 (W.D. Tex. July 28, 2023) (holding a declaration redundant because it duplicated defendants' affirmative defenses); *see also Nextera Energy Mktg. LLC v. Shell Energy N. Am. (US) LP*, No. 21-CV-

02280, 2023 WL 2541964, at *3 (S.D. Tex. Mar. 16, 2023). Declaration 18c is **REDUNDANT**.

Lastly, the Court finds Declaration 18a redundant. Continental asks the Court to declare "that the SLA does not require Continental to pay Thornton for freshwater Thornton sells to third parties[.]" (Doc. 47 at 5 ¶ 18a). In support of Declaration 18a, Continental argues "[a]ny obligation for Continental to exclusively use Thornton Ranch's water for certain operations does not in any way address whether Continental is required to pay damages when Thornton Ranch sells water obtained from the leased premises to third parties." (Doc. 51 at 6). Yet this is redundant of Continentals affirmative defense, in which it asserts Thornton Ranch's claims are barred because Thornton provided and sold freshwater (including from the additional water wells) to third parties, benefiting economically, while attempting to hold Continental liable. (Doc. 46 at 10 ¶ 61g) (cleaned up). The Court must adjudicate Thornton Ranch's claims with Continental's affirmative defenses. *See Redwood Resort Props., LLC v. Holmes Co.,* No. 06-CV-1022, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007). If the Court determines the SLA was breached, it will have to determine the proper damages. Thus, Declaration 18a is **REDUNDANT**.

Put simply, Continental's requested declarations seek resolution of matters already at issue in the lawsuit. *See Nagy*, 2023 WL 4872908, at *2. The Court **RECOMMENDS** Continental's declaratory judgment counterclaim be **DISMISSED**. (Doc. 47 at 4–5).

**B. Continental's Texas Theft Liability Counterclaim**

And, once again, Thornton Ranch moves to dismiss Continental's theft of property claim under the Texas Theft Liability Act ("TTLA"). (Doc. 50 at 14–16). Thornton Ranch continues to allege that Continental pleads the "wrong [theft] claim," attempting to rewrite Continental's claim as one for theft of services. *Id.* at 16–17. As the Court explained once before, at this stage of litigation, Continental pleads a claim for theft of property.

The TTLA provides a civil remedy to theft victims as defined under the Texas Penal Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 134.002–003. To recover for theft in the civil context, a plaintiff must establish: (1) plaintiff had a possessory right to property; (2) defendant unlawfully appropriated property in violation of the theft provisions of the Texas Penal Code; and (3) plaintiff sustained damages because of the theft. *Kinect Solar, LLC v. Globus Enters., LLC*, 1-23-CV-00674, 2024 WL 990071, at *3 (W.D. Tex. Feb. 28, 2024) (citing *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 542 (S.D. Tex. 2011)), *R. & R. adopted*, 2024 WL 1319748 (W.D. Tex. Mar. 27, 2024). The Texas Penal Code distinguishes between theft of property and theft of services. A person commits theft generally "if he unlawfully appropriates property with the intent to deprive the owner of property." TEX. PENAL CODE § 31.03(a); *Rodriguez v. State*, 889 S.W.2d 559, 561 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). A person commits theft of service "if, with intent to avoid payment for service that the actor knows is provided only for compensation: … (2) having control over the disposition of services of another to which the actor is not entitled, the actor intentionally or

12

knowingly diverts the other's services to the actor's own benefit…." TEX. PENAL CODE § 31.04(2). "Service" includes "telecommunication, public utility, or transportation service." *Id.* § 31.01(6).

Continental's Second Amended Counterclaims allege Thornton Ranch committed theft of property under Section 31.03 in "voluntarily, intentionally, and knowingly divert[ing] Continental's electricity, which Thornton was not entitled to and which benefited Thornton and third parties …." (Doc. 47 at 7). Thornton Ranch moves to dismiss arguing Section 31.03 "h[as] no bearing on theft of electricity" because "electricity is a ***service***, not property." (Doc. 50 at 14) (emphasis in original). Thornton Ranch then takes its argument a step further, reasoning Continental should have pleaded theft of services under Section 31.04—despite Thornton Ranch admitting Section 31.04 does not apply to Continental. *Id.* at 16–17.

This Court does not—and did not—dispute that electricity can be a service as defined under Section 31.04. As this Court explained in the First R. & R.:

> After reviewing the case law, Section 31.04 is inapplicable to Continental's theft claim as pleaded. Theft of services deprives a service provider of the compensation it receives from providing a service. *See Raney v. State*, 769 S.W.2d 698, 700 (Tex. App.—Corpus Christi-Edinburg 1989, no pet.) (explaining that depriving an owner of his rental property is theft of property but depriving the owner of his ability to rent the property is theft of services); *see also Nelson v. State*, 86 S.W.2d 782, 783 (Tex. Crim. App. 1935) (diverting a natural gas company's gas without compensation was theft of services); *Rodriguez*, 889 S.W.2d at 561 (failing to pay cab driver for a taxicab ride was theft of services); *Ainsworth v. State*, Nos. 10-20-00055-CR, 10-20-00056-CR, 2020 WL 6192941, at *2 (upholding theft of services conviction for tapping into a water company's water line). Continental is an "independent oil producer," not an electric utility. (Doc. 23 at 2). Continental is not alleging Thornton Ranch stole the electricity service it provides. Rather, Continental alleges Thornton Ranch

13

stole the electricity it possessed. (*See* doc. 21 at 4 (alleging Thornton Ranch used its electricity without permission while Continental "foots the electric bill")). The fact electricity can be provided as a service in one context does not preclude it from qualifying as tangible property in another context.

(Doc. 34 at 14) (footnote omitted). This reasoning stands.

Without question, the Texas Penal Code defines "service" to include "telecommunication, public utility, or transportation service." TEX. PEN. CODE. § 31.01(6)(B). As Thornton Ranch provides, and as the Court explained in the First R. & R., a public utility "means and includes a private corporation that does business in the state …engaged in the business of generating, transmitting, or distributing electric energy to the public." TEX. UTIL. CODE § 186.001; (Docs. 34 at 14, 14 n.11; 50 at 15). Continental, an "independent oil producer," decidedly falls outside this definition. Sure enough, Continental brings not a theft of services claim, but a theft of property claim. Thus, the question before the Court is whether electricity can constitute property.

Thornton Ranch argues electricity cannot constitute property. (Doc. 50 at 14). To support its position, Thornton Ranch points to cases describing electricity as a service; yet all these cases involve public utilities. *In re Oncor Elec. Deliv. Co.*, 630 S.W.3d 40 (Tex. 2021) (deciding whether an electric utility can compel a plaintiff in a tort action to appear before the Public Utility Commission per the Public Utility Regulatory Act); *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306 (5th Cir. 2021) (deciding the constitutionality of a Texas law barring new utility companies from entering Texas); *Canadian Breaks, LLC v. JPMorgan Chase Bank NA*, No. 21-CV-00037, 2024 WL 1337868 (N.D. Tex. Mar. 28, 2024) (concerning an energy supplier's inability to provide electric

services during Winter Storm Uri); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 213 (Tex. 2002) (involving a personal injury claim a utility customer brought against her public utility company). Again, the Court does not dispute that public utilities provide electric services to paying customers. But, here, there is no public utility. None of these cases reach whether electricity constitutes property to the party ***purchasing*** electricity.

On the other hand, Continental points to the Texas Administrative Code, which "defines electricity, for tax purposes, as 'tangible personal property.'" (Doc. 51 at 9 (citing TEX. ADMIN. CODE § 3.295(b)). Thornton Ranch instructs the Court to disregard this definition of electricity as tangible property because the Comptroller of Public Accounts rather than the Texas legislature promulgated the regulation. (Doc. 52 at 5 n.3). Thornton Ranch argues the Comptroller's definition of "tangibles personal property" capable of taxation is "unsurprisingly" more expansive than tangible property under the Texas Penal Code. *Id.* While acknowledging the Comptroller rather than the Texas legislature promulgated the definition, the Texas Administrative Code still supports Continental's position that electricity can constitute tangible property.[2] Given the stage of litigation, and the absence of any case law definitively stating electricity is not property, the Court finds this sufficient to survive a motion to dismiss.

---

2. The Court adds that the Texas Penal Code includes a theft provision for petroleum products, which includes natural gas. TEX. PENAL CODE § 31.19(a) ("In this section, 'petroleum product' means crude oil, natural gas, or condensate."). Gas utilities provide natural gas. While not determinative of the question at hand, the Court finds it informative that theft of natural gas is separate from theft of services.

Assuming electricity can constitute property, the Court turns to whether Continental adequately pleads a claim for theft of property. As mentioned, to plead a civil theft claim, Continental must allege (1) it had a possessory right to the electricity; (2) Thornton Ranch unlawfully appropriated the electricity in violation of the Texas Penal Code; and (3) Continental sustained damages because of the theft. *See Wellogix*, 788 F. Supp. 2d at 542. A person commits a theft offense if he or she unlawfully appropriates property with the intent to deprive the property owner. TEX. PENAL CODE § 31.03(a). Appropriation is unlawful if "it is without the owner's effective consent." *Id.* § 31.03(b). Finally, a person commits an offense under the Texas Penal Code only if he or she voluntarily engages in the conduct. *See* TEX. PENAL CODE § 6.01(a). Thornton Ranch contends Continental did not adequately plead the voluntary requirement.

The Texas Penal Code's voluntary requirement means to distinguish "'voluntary' conduct from 'accidental or unintended' results." *Rogers v. State*, 105 S.W.3d 630, 637–38 (Tex. Crim. App. 2003). Voluntary refers to "conduct that is within the control of the actor." *Id.* Here, Continental pleads "Thornton connected the New Water Wells to Continental's electrical line," and Thornton Ranch continues to access the electrical line despite Continental sending a "cease and desist" letter. (Doc. 47 at 3–4). As a result, Continental adequately alleges Thornton Ranch acted voluntarily. *Id.* at 7–8.

Further, Continental adequately pleads a theft of property claim. Continental pleads "it possessed and had the legal right to its electricity" and Thornton Ranch accessed it without authorization. (Doc. 47 at 7). Continental further alleges it sent "written correspondence and notice advising Thornton to cease and desist from

hooking up its New Water Wells to Continental's electrical line and infrastructure." *Id.* at 3–4. Despite this letter, Continental claims Thornton Ranch continued to access its electrical infrastructure, "including the electricity contained therein," with the intent to deprive. *Id.* at 4, 7. Thornton Ranch's unauthorized use of Continental's power places "significant additional stress on Continental's electric infrastructure," damaging Continental. *Id.* at 4.

In sum, the Court **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **DENIED** as to Continental's TTLA claim for theft of electricity. (Doc. 50 at 14–19).

### C. Continental's Trespass Counterclaim[3]

Lastly, Thornton Ranch moves to dismiss Continental's counterclaim for trespass. (Doc. 50 at 19–20). Continental alleges two ways in which Thornton Ranch trespassed. First, Thornton Ranch's unauthorized use of Continental's property and electricity for the New Water Wells amounted to trespass. (Doc. 47 at 3, 8). And second, Thornton Ranch trespassed in allowing its cattle and livestock to graze on Continental's property without permission. *Id.* at 4, 8. The Court finds Continental sufficiently pleads a counterclaim for trespass.

To start, Continental concedes dismissal of its trespass claim as it relates to Thornton Ranch's cattle and livestock. (Doc. 51 at 11 n.10 ("Continental does not oppose dismissal of the trespass claim to the extent it is based upon Thornton Ranch's

---

3. Continental raises that, "though its trespass claim has been alleged in all three iterations of Continental's counterclaims, Thornton Ranch did not challenge" the claim in the First Motion to Dismiss. (Doc. 51 at 11 n.8). This is true. And as noted, the parties moved to amend their pleadings *after* the Magistrate Judge issued the First R. & R. (Doc. 34). So, when the parties jointly moved to amend their pleadings, and Continental repleaded its counterclaims for the third time, Continental was unaware Thornton Ranch contested the trespass claim.

unauthorized cattle-grazing")). As a result, only Thornton Ranch's unauthorized use of Continental's electricity is at issue. But Continental attempts to reframe its remaining trespass claim in its Response, arguing for the first time that "Thornton Ranch trespassed with respect to Continental's **electricity infrastructure** during the process of stealing and/or converting Continental's electricity." *Id.* at 11 (emphasis added). Thornton Ranch argues Continental's attempts to recast its trespass claim in response to Thornton's Motion to Dismiss warrant dismissal. (Doc. 52 at 6–7). The Court agrees Continental improperly rewrites its trespass claim, but this does not necessitate dismissal.

Continental cites to two allegations to show it pleads trespass to electricity infrastructure rather than electricity. Neither allegation includes the phrase "electricity infrastructure."[4] (Doc. 51 at 11). Likewise, nowhere in Continental's counterclaim for trespass does Continental include the phrase "electricity infrastructure." (Doc. 47 at 8). Rather, Continental seemingly asks the Court to read *electricity* as synonymous with *electricity infrastructure* in its trespass claim. (*See* Doc. 51 at 12). This request ignores the attention the parties—and the Court—have devoted to the term electricity in this suit. It also ignores the fact that Continental distinguishes electricity infrastructure from electricity in its Second Amended Counterclaims. (Doc. 47 at 3–4). For example, in the

_____

4. The allegations: (1) "Continental possessed or had the legal right to exclude Thornton from property Thornton entered, accessed, used, and/or appropriated for the purpose of using Continental's property and electricity without authorization for Thornton's own economic benefit and for the benefit of third parties to whom Thornton sold freshwater …"; and (2) "Continental possessed or had the legal right to exclude Thornton from Continental's property and electricity, which Thornton knowingly, voluntarily, and intentionally accessed, used, and appropriated for its own economic benefit and that of third parties …." (Doc. 51 at 11).

background section, Continental alleges "Thornton never had permission or authorization to access, use, or appropriate Continental's property, including its *electricity*, *electrical infrastructure*, and equipment to drill, maintain, and/or equip the New Water Wells.[5] *Id.* at 3. This allegation, and the others like it, indicate Continental considers electricity infrastructure separate from electricity.

The Court reads this as Continental attempting to recast its trespass to electricity claim as one to electricity infrastructure, effectively raising a new claim in its Response. As a rule, the Court will not consider a new claim in response to a motion to dismiss. *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 593–94 (W.D. Tex. 2020) ("It is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time.") (citations and internal quotation marks omitted). So to the extent Continental now pleads trespass to electricity infrastructure, the Court does not consider the claim.

With that said, the Court considers Thornton Ranch's argument that Continental's claim for trespass to electricity must be dismissed. (Doc. 50 at 19–20). Thornton Ranch reads Continental's trespass claim as one for real property and contends electricity is not real property. *Id.* at 19. "Real property is defined as 'land, and generally whatever is erected or growing upon or affixed to land.'" *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000). The Court agrees—electricity likely is not

_____

5. The Court adds that, despite incorporating all preceding paragraphs in its claim for trespass, Continental never pleads trespass to electrical infrastructure. (*See* Doc. 47 at 8). This is a change from Continental's First Amended Counterclaims wherein Continental alleged "it had the legal right to exclude Thornton from property Thornton entered, … for the purpose of using Continental's property, electricity, and/or electric infrastructure without authorization …. (Doc. 21 at 8–9).

real property. But it is unclear to the Court whether Continental's trespass counterclaim was one for real property or chattels. (*See* Doc. 47 at 8 (titling the counterclaim "Thornton Committed Trespass")). From Continental's Response, however, the Court gathers Continental pleads trespass to chattels, rather than trespass to real property. *Id.* at 8; (Doc. 52 at 7).

Under Texas law, trespass to chattels is "the wrongful interference with the use or possession of another's property." *Jones v. Boswell*, 250 S.W.3d 140, 143 (Tex. App.—Eastland 2008). Liability for trespass to chattels requires either actual damage to the property or depriving the owner of its use for a substantial period. *Kypuros v. Freedom Mortg. Corp.*, No. 23-CV-00048, 2023 WL 11824857, at *2 (W.D. Tex. Apr. 19, 2023) (citing *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981)). Here, Continental pleads it possessed and had a legal right to exclude Thornton Ranch from Continental's electricity. (Doc. 47 at 8). Thornton Ranch accessed Continental's electricity without authorization and allegedly continues to interfere with Continental's electricity. (Doc. 47 at 8). Thus, Continental adequately pleads a counterclaim for trespass to chattels.

The Court therefore **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART** as to Continental's counterclaim for trespass. (Doc. 50 at 19–20).

## IV.    RECOMMENDATION

For the reasons given above, the undersigned **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 50). The undersigned **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **GRANTED** as to Continental's Declaratory Judgment Counterclaim. *Id.* at 8–14**.** The undersigned further **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **DENIED** as to Continental's counterclaim under the TTLA. *Id.* at 14–19. Lastly, the undersigned **RECOMMENDS** Thornton Ranch's Motion to Dismiss be **DENIED** as to Continental's counterclaim for trespass to chattels for electricity but **GRANTED** as to Continental's counterclaim for trespass to real property because of its cattle. *Id.* at 19–20.

SIGNED this 7th day of January, 2025.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).