# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# PECOS DIVISION

| | | |
|---|---|---|
| **THORNTON RANCH, LLC,**<br>*Plaintiff,*<br><br>v.<br><br>**CONTINENTAL RESOURCES, INC.,**<br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | P:23-CV-00022-DC |

## ORDER DENYING SUMMARY JUDGMENT

BEFORE THE COURT is Plaintiff's Motion for Partial Summary Judgment.[1] In the Motion, Thornton seeks summary judgment on several grounds and claims. Having considered the Motion and its responses, the Court **DENIES** the Motion.

## BACKGROUND

This case stems from a Surface Lease Agreement (the "SLA") between Thornton and Jagged Peak, a company bought by Continental after the signing of the SLA. Thornton and Continental disagree over the interpretation of several provisions of the SLA, including provisions governing the exclusive use of fresh water by Continental for its operations, payment for the drilling and maintenance of new water walls for Continental's operations, and the amount of water to be transferred across the Leased Premises.

## STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[2] A dispute over a

---

[1] Doc. 65 (the "Motion").
[2] Fed. R. Civ. P. 56(a).

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[3] A fact is material "if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."[4] When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[5] Nor may a court make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.[6]

Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.[7] When the movant bears the burden of proof, it must establish all the essential elements of its claim that warrant judgment in its favor.[8] In such cases, the burden then shifts to the nonmoving party to establish a genuine issue for trial.[9] Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and cannot defeat a motion for summary judgment.[10] Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.[11] Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[4] *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted).
[5] *Anderson*, 477 U.S. at 255.
[6] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[7] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).
[8] *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).
[9] *Austin v. Kroger Texas, LP*, 864 F.3d 326, 335 (5th Cir. 2017).
[10] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).
[11] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

judgment.[12] After the nonmovant has had a chance to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted.[13]

## DISCUSSION

The parties dispute the interpretation and application of several contractual provisions, as well as Continental's status as a party to the SLA. The Court addresses these issues in turn.

### I. Continental's Breach of the SLA

Thornton moves for partial summary judgment on the liability portion of its breach of contract claims, reserving damages and attorney fees issues for trial.[14]

As stated by Thornton, the elements for breach of contract in Texas are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[15]

As a preliminary matter, the Court agrees that the SLA is valid, and that Continental is bound by it, despite belated arguments that it is not.

---

[12] *Id.*
[13] *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).
[14] Motion at 7 (citing Fed. R. Civ. P. 56(a); *NB Gathering IX Pref, L.L.C. v. Nelson*, No. 3:20-CV-3491-K, 2022 WL 347610, at *1 (N.D. Tex. Feb. 4, 2022) (moving for summary judgment on liability question only).
[15] Motion at 7 (citing *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

But as to whether Thornton performed its obligations under the SLA for the freshwater provision, material issues of fact remain unclear, particularly whether Thornton provided to Continental the right to use all fresh water prior to selling it.[16]

But the Court is less taken by Continental's argument that summary judgment is inappropriate simply because Thornton has not proven it could supply sufficient water for Continental's operations. Thornton need not prove it had adequate supply *unless Continental possesses an actual good faith argument that it believed Thornton could not provide adequate supply*. The provision of the SLA at issue states that Continental is on the hook to purchase fresh water exclusively from Thornton, to some extent not yet clear to the Court, "as long as [Thornton] is capable of supplying adequate fresh water as [Continental]'s operations demand."[17] But in its response, Continental does not argue that, at least before this litigation, it ever *believed* Thornton could not provide it that adequate supply of fresh water. Instead, Continental repeatedly argues simply that Thornton has not proved it had adequate supply. So while the Court agrees with Continental that it is unclear that Thornton ever had sufficient water for Continental's operations, the Court will remind Continental that such evidence is not relevant unless, at a minimum, Continental actually *believed* so at the relevant time.

As to whether Thornton performed its obligations under the new wells provision, Continental disputes whether Thornton made a "reasonable request," as is required by the SLA when drilling new wells.[18] The Court agrees, although whether Thornton made a

---

[16] Although Thornton alleges it did, the Court finds the evidence supporting its position insufficient to take the issue from the jury.
[17] SLA § H(a).
[18] Response at 10.

4

reasonable request will matter only if the jury decides that any of the new wells drilled were "to provide adequate supply for [Continental]'s operations."[19]

As to Continental's breach, with respect to both the freshwater sales and the new wells provision, as noted in the Court's Order Granting in Part and Denying in Part Summary Judgment,[20] these issues hinge on the geographic scope intended by the parties for Continental's "operations."

Thus, the Court cannot grant summary judgment as to the breach of contract claims. Summary judgment on these grounds is **DENIED**.[21]

## II. Continental's Counterclaims

Continental asserts counterclaims for breach of contract, declaratory judgment, trespass, theft, and conversion.[22] According to Thornton, each fail as a matter of law.

### A. Breach of Fresh Water Provision

Continental argues that Thornton breached the SLA's exclusivity provision when it sold fresh water to third parties.[23] According to Thornton, this is false because (1)

---

[19] SLA § H(b).
[20] Doc. 87.
[21] The Court believes genuine issues of fact and law exist as to whether Thornton waived any of its interpretations of the SLA.
[22] Doc. 47.
[23] In Continental's counterclaim, it argues that by failing to provide Continental with the first right of refusal to water generated by the new wells, Thornton has violated the " 'Exclusive' Freshwater Purchase Requirement.' " Doc. 47 ¶ E. The Court does not view this counterclaim as a breach of the *exclusivity* provision but a breach of the *new wells* provision. The exclusivity provision serves to bind Continental to exclusively purchasing water from Thornton. It is the new wells provision that binds Thornton to providing Continental with the right of first refusal. Continental does argue that, in a roundabout way, Thornton's failure to offer it the right of first refusal led to Continental needing to purchase water from third parties, but, again, the breach by Thornton would be as to the new wells provision.

Continental failed to perform under the SLA and (2) Thornton sold the excess fresh water to third parties only after first offering it to Continental, as is contemplated by the SLA.

It is true that the SLA's new wells provision, section H(b), allows Thornton to "utilize all water produced by the New Water Wells in excess of that utilized by [Continental]" after Continental has been offered the "first right to use all water producible from the New Water Wells for use in its operations."[24] But Continental disputes whether it was always provided this right.[25] Additionally, material issues of fact exist as to whether Continental failed to perform under the SLA. These are facts that must be resolved by the fact finder for a resolution. Summary judgment as to this counterclaim is **DENIED**.

### B.  Breach of Confidentiality Provision

Continental claims Thornton Ranch breached the SLA's confidentiality provision by disclosing "the confidential terms, conditions, and payment details of the SLA and its Exhibit A with third parties, including Brady Bounds and POWR."[26] The SLA's "Confidentiality Provision" explicitly states that "Lessor agrees that it will not disclose the terms, conditions, or payment details of this Agreement to any third parties."[27]

This disclosure is of apparent consequence because Thornton had an agreement with POWR Resources, Brady Bounds' company, to purchase all of Thornton's fresh water not already committed under preexisting agreements like the SLA.[28] Continental claims that Thornton and Bounds colluded to defraud Continental by making it pay for new wells that

---

[24] Motion at 14 (citing SLA § H(b)).
[25] Response at 13-14.
[26] Doc. 47 ¶ 22.
[27] SLA § J.
[28] Response at 16.

were unnecessary for its own operations, allowing Thornton to sell water to Bounds instead.[29]

Thornton counters that Continental's claim fails, as a matter of law, because, "even assuming a breach occurred, the only 'damages' Continental actually plead [*sic*] for this supposed breach are not the natural and direct consequence of any Thornton Ranch action," which are not recoverable.[30] Thornton does not dispute that it breached the provision. In response, Continental reminds the Court that Thornton has already conceded it breached this provision and that its damages are direct and recoverable.

Continental alleges in its Complaint that it suffered damages in the form of "being required to purchase freshwater from Thornton at different amounts and frequencies than Continental and/or its predecessors would have otherwise been required to purchase" and costs based on "Thornton's purported need to drill additional water wells."[31] But Thornton notes that Continental's corporate representative conceded in a deposition that the only damages Continental actually attributes to the breach of this provision is "the cost it incurred 'tying in that backup line,' which he claimed 'would have never been used' if not for the alleged disclosure.'"[32] Thornton alleges these damages are both too speculative and that Continental would have incurred the loss regardless of the breach as it had been considering installment of the backup line to supplement operations since at least early 2023.[33]

---

[29] *Id.* at 16-18.
[30] Motion at 16.
[31] Doc. 47 ¶ 22.
[32] Motion at 16 (citing deposition transcript).
[33] *Id.*

7

The Court does not believe Continental's damages are too speculative or indirect to proceed to trial. Continental will, of course, need to prove that some conspiracy existed between Bounds and Thornton to recover damages for any injury stemming from those events, and material issues of fact exist concerning whether the backup line would have been installed regardless of the breach, but these issues may be resolved after more facts are presented. Summary judgment on these grounds is **DENIED**.

### C. Conversion

Continental alleges Thornton converted its electricity when it "unlawfully, and without authorization accessed, used, controlled, exercised domain over, and appropriated Continental's electricity for its own benefit and for the benefit of third parties to whom Thornton sold freshwater."[34]

To prevail on its conversion claim, Continental must prove that (1) Continental owned or had legal possession of the property or entitlement to possession; (2) Thornton unlawfully and without authorization assumed and exercised dominion over the property to the exclusion of, or inconsistent with, the Continental's rights as an owner; (3) Continental demanded return of the property; and (4) Thornton refused to return the property.[35]

Thornton alleges Continental's claim fails because it cannot prove the second element.[36] In support, Thornton cites the SLA's new wells provision, which requires Continental to "pay 100% of the cost to drill, equip and maintain the New Wells" and allows Thornton to "use all freshwater 'in excess of [the freshwater] utilized by the Lessee" (i.e.,

---

[34] Doc. 47 ¶ 48.
[35] Response at 18 (citing *Apple Imps., Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, writ denied).
[36] *Id.*

Continental)."[37] Because Thornton was just complying with its rights and duties under the SLA, it argues, Thornton did not unlawfully convert the electricity.[38]

Additionally, argues Thornton, Continental suffered no harm as a result of Thornton's connection to the wells, as "Continental (and its predecessors) have always paid 100% of the electricity costs."[39] But, as argued by Continental, the issue is that Continental claims Thornton should not have drilled the new wells, that it also should not have used that extra electricity for the new wells, and therefore that Continental incurred additional costs. Because a material issue of fact exists as to the new wells and therefore Thornton's use of energy to drill and supply those wells, Thornton's request for summary judgment is **DENIED**.

### D. Theft

As to Continental's theft claim, Thornton adopts by reference, using an informal bullet point list, arguments from its prior motion to dismiss.[40] Those bullet points posit that allowing Continental to amend its claim to theft of services would be futile, that Continental lacks grounds to assert that Thornton stole electric services with intent to avoid payment for service, and that Continental makes only formulaic recitations of Thornton's "voluntary" acts in violation of Rule 12(b)(6). As noted by Continental, several of these arguments are "*specific to the posture of a Rule 12(b)(6) motion and are not relevant here*."[41] Additionally, Continental

---

[37] *Id.* (citing SLA § H(b)).
[38] *Id.* at 18-19.
[39] *Id.* (internal citation to depositions omitted).
[40] As noted by Continental, Thornton repeatedly refers to itself as "Continental," noting that "Continental adopts following arguments in its Second Amended Motion to Dismiss (Dkt. 50 at 14–19)."
[41] Response at 19 (emphasis added).

does not seek to amend its claim to theft of services, and the Court has already ruled, in a separate motion, that electricity may constitute a "product" under Chapter 31.[42] The Court **DENIES** summary judgment.

### E.  Trespass

Using another bullet point list, Thornton[43] again adopts arguments from a prior motion to dismiss. Because, as both parties acknowledge, Continental has abandoned it cattle grazing trespass claim, the Court need not consider this argument, as that claim has been **WAIVED**.

### F.  Declaratory Judgment

Because Continental's declaratory judgment counterclaim was dismissed under the Court's previous order,[44] the Court need not consider Thornton's request for summary judgment on these grounds.

It is so **ORDERED**.

SIGNED this 1st day of February, 2025.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[42] *See* Order Adopting R&R (Doc. 88).
[43] Again, Thornton refers to itself as "Continental."
[44] *See* Order Adopting R&R (Doc. 88).